\05_A\LIAB\RGH\LLPG\88334\RYM\13061\00147



FILED

FEB 0 6 2002

PER _____
HARRISBURG, PA   DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DEBORAH GIULIANI,<br>Plaintiff | : CIVIL ACTION NO. 1:01-CV-311<br>:<br>: |
| v. | :<br>: |
| GEORGE HANEY, individually and in his<br>official capacity as an employee of<br>Swatara Township, Pennsylvania,<br>Defendant | : (JUDGE CALDWELL)<br>:<br>:<br>:<br>: JURY TRIAL DEMANDED |

### BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR AN AWARD OF 42 U.S.C.§1988 ATTORNEY'S FEES

Deborah Guiliani ("the Plaintiff") filed suit on February 20, 2001 against

Police Officer George Haney ("Officer Haney") alleging that on May 29, 2000 she

was arrested on two summary citations, Disorderly Conduct and Criminal

Trespass, both issued without probable cause, held in custody for an unreasonable

long period of time, and handcuffed and paraded in front of her family and friends.

Plaintiff further alleged violations of the state law torts of False Arrest and False

Imprisonment and that Officer Haney acted with gross negligence, malice and intentional wrongdoing. She further alleged that she was subject to unlawful, illegal, unreasonable and unconstitutional use of force and was forced to spend money to defend the charges. In her three count Complaint she demanded as to each count both compensatory and punitive damages. This Court granted Summary Judgment on Plaintiff's excessive force claim.

Plaintiff dropped her state law claim and the punitive damage claims were either dismissed or withdrawn. The jury found for Officer Haney on the defiant trespass charge and found for the Plaintiff on the disorderly conduct charge. The jury verdict totaled $825.00 and had the effect of reimbursing her for Attorney Spero Lappas's fees in defense of the criminal charges plus an additional sum of $75 for the civil rights violation.

While it is clear since *Farrar v. Hobby*, 506 U.S. 103; 113 S.Ct. 566, 121 L.Ed.2d 492 (1992) Plaintiff is a prevailing party. As a prevailing party, Plaintiff would be entitled to a reasonable attorney's fee. It is also clear since *Farrar* that a reasonable fee maybe no fee or a greatly reduced fee.

Once civil rights litigation materially alters the legal relationship between the parties, "the degree of the Plaintiff's overall success goes to the reasonableness of a fee award under *Hensley v. Eckerhart,* 461 U.S. 424 (1983). "The most critical factor" in determining the reasonableness of the fee award is the "degree of success obtained." *Hensley* supra. at 436.

*Hensley* also decided that if "a Plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hour rate may be an excessive amount Id. at 436.

After considering the amount and nature of damages awarded, a Court may lawfully award low fees or no fees without reciting the twelve factors bearing unreasonableness, see *Hensley* 436 U.S. at 430 note 3, or multiplying "the number of hours reasonable expended… by a reasonable hourly rate." 461 U.S. at 433. After all, attorney fee awards under §1988 were never intended to "produce windfalls to attorneys." *Riverside v. Rivera*, 476 U.S. 561 (580) (Plurality Opinion). (Quoting S.Rep. No. 94-1011, P. 6, 1976. The District Court awarded $280,000 in attorney's fees without "considering the relationship between the extent of success and the amount of fee award." *Hensley*, supra at 438.

3

In the instant matter, it would seem that this Court could view that the Plaintiff's victory is purely technical or de minimis. It is enough for a Court to explain why the victory is de minimis and announce a sensible decision to "award low fees or no fees" at all. In *Farrar*, for example, a reasonable fee was no fee. In Greg v. City of Philadelphia, 1987 U.S. District LEXIS 308, Judge Giles under the "results obtained" principal of *Hensley* reduced the attorney fee claim by 65%.

In the instant matter, under the "results obtained" principal the attorney fees must be cut drastically. For example, in a handcuffing case, a Philadelphia jury awarded the Plaintiff $167,000 in damages. *Rogers v. Thomas Jefferson University Hospital*, 23 Philadelphia 632; 1992 Phila. Cty. Rept. LEXIS 34 (1992). Moreover, false arrest cases have resulted in numerous six-figure awards such as in *Moore v. Caln Township*, 996 U.S. District LEXIS 449. See also *Smith v. City of Seven Points*, 608 F.Supp. 458 (1985).

If there is any doubt that Plaintiff's "results obtained" was minimal, nominal or de minimis, we would like the opportunity to supply a more extensive list of awards.

Finally, we note that no contemporaneous time records have been supplied with Plaintiff's Brief. For that reason alone, Plaintiff's attorney fee claim should be dismissed in its entirety.

Respectfully submitted,
MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

DATED: 2-1-2002            BY: _____
                                Robert G. Hanna, Jr., Esquire
                                4200 Crums Mill Road
                                Suite B
                                Harrisburg, PA 17112
                                I.D. No. 17890
                                (717) 651-3515

                                Attorney for Defendant,
                                George Haney

**BARBARA ODORE GREGG, et al. v. CITY OF PHILADELPHIA, et al.**

**CIVIL ACTION No. 84-1051**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*1987 U.S. Dist. LEXIS 308*

**January 16, 1987, Decided; January 20, 1987, Filed**

OPINIONBY:
[*1]

    GILES

OPINION:

    MEMORANDUM

    GILES, J.

In this federal civil rights action, plaintiff Barbara Gregg seeks counsel fees and costs pursuant to *42 U.S.C. § 1988* (1982) as the prevailing party on a claim that Philadelphia Police Detective Christopher Mower used excessive force and/or intimidation in effectuating her arrest. Mrs. Gregg was a co-owner and operator of a used car lot. She was arrested by the police pursuant to a valid arrest warrant which claimed obstruction of the administration of justice, receiving stolen goods and criminal conspiracy.

A private citizen had complained to the Philadelphia police that a removable hard top for a Mercedes-Benz convertible automobile, which he believed was the same top which had been stolen from his Mercedes-Benz a year before, was attached to a used car on plaintiff's lot. Mrs. Gregg refused to turn over the hardtop to the police for inspection at police headquarters. Detective Mower insisted such inspection was necessary to verify the assertions of the complainant. A search warrant was necessary, but before it could be executed upon at the lot, the Greggs caused the hardtop to be removed from the lot so that the police could not find it. When asked [*2] by the police where it was, Mrs. Gregg said she did not know, even though she knew that it was then in the hands of a silent partner/owner of the lot. Detective Mower obtained an arrest warrant and was the principal actor in effectuating Mrs. Gregg's arrest on the charges

described. During the preliminary stages of the criminal court proceedings, the charges were dismissed without stated reasons.

Claiming violations of her civil rights, Mrs. Gregg then sued the City of Philadelphia under *42 U.S.C. § 1983,* alleging a pattern and practice of police misconduct in making the arrests and alleging that Detective MOwer engaged in harassing misconduct in the investigation and in the arrest process. She alleged pre-arrest and post-arrest physical and psychological abuse by the defendant officer. She also asserted a litany of pendent state claims; abuse of process, false arrest/malicious prosecution, assault and battery, negligence, and intentional infliction of emotional distress. She sought punitive damages on the federal and state claims.

At trial, this court granted motions for directed verdicts in favor of the City on the federal claims and in favor of Detective Mower and the City on all [*3] state claims other than abuse of process, battery and negligence. The court found that there was probable cause to arrest plaintiff on the charges preferred. The court also found during the trial that the pre-arrest conduct of Detective Mower was not actionable.

The jury found that Detective Mower had violated Mrs. Gregg's civil rights but found that she had sustained no related injury. Hence, it awarded her no compensatory or punitive damages. However, on the state claims the jury found that in effectuating the arrest detective Mower's conduct was an abuse of process and awarded Mrs. Gregg $2500 in compensatory damages. It found under the circumstances presented that the misconduct did not warrant the award of punitive damages. It determined that Mrs. Gregg was not the victim of a battery in the manner in which she was arrested or

1987 U.S. Dist. LEXIS 308, *

transported to the police station and that her claim of negligence was not proved.

Post-trial, both parties claimed to have prevailed on the federal claim. After considering the court's offer of a new trial on the federal claim because of a possible inconsistency between the jury's answers to the federal claim interrogatories, inter se, and the state [*4] claim award for abuse of process, the parties agreed that judgment of one dollar would be entered as compensatory damages in favor of Mrs. Gregg on the federal claim. Thus, on the federal civil rights claim she is considered the prevailing party as to Detective Mower only.

Plaintiff asserts a lodestar for counsel fees of $40,875 and costs of $4,657.20. An hourly rate for M. Mark Mendel, Esquire, of $200 per hour and an hourly rate of $125 per hour for george F. Schoener, Jr., Esquire, are claimed. defendant does not challenge the hourly rates, but argues that Mr. Mendel's participation at trial was unnecessary and, therefore, that his claims for compensation are duplicative and unreasonable. Mr. Mendel has claimed only for trial time and trial preparation time during the trial days. Mr. Schoener, who was the principal speaker and examiner at trial, claims for general investigation, research, discovery, various briefs, trial memoranda, participation at trial and preparation of the fee petition.

In determining the lodestar hours, it is necessary to consider separately time spent on the federal and state claims asserted against Detective Mower. The fee petition does not do that. However, [*5] it is my recollection that the scope of that federal claim encompassed all the state law theories except the negligence count. The negligence theory was that Mrs. Gregg suffered bumps and bruises in the police van during the transport between the site of arrest and the police headquarters. Allegedly, the van had no handholds in the prisoner containing area, her hands were handcuffed behind her back and the driver of the van was reckless, drove at high speeds and deliberately hit street potholes. The jury rejected the negligence claim.

The jury did find that there was an abuse of process by Detective Mower. The scope of that theory was coextensive with the federal claim. The jury was permitted to consider the police pre-arrest conduct in determining whether the detective developed a personal motivation to abuse the authority given him to effectuate the plaintiff's arrest and secure the prisoner. Plaintiff contended that in making the arrest, detective Mower used unreasonable physical force, injuring her wrist, and as officer in charge, cause her to be subjected unreasonably and without justification to a strip search and, further, needlessly intimidated and embarrassed her

by causing [*6] a horde of police officers to come to the arrest scene. She claimed that he permitted her to be photographed while handcuffed and then transported in a police van instead of a police car to police headquarters. Mrs. gregg argued that detective Mower developed a personal animus against her because she refused to turn over to him voluntarily the removable Mercedes-Benz hardtop. The jury rejected the claims of battery and negligence; thereby, it rejected all contentions of physical injury caused by the actions of Detective Mower of the City.

However, the finding of abuse of process encompassed emotional anguish and embarrassment caused by the strip search, her fears of being observed by male police officers during the strip search, and the taking of her photograph at the scene of the arrest by a police photographer.

The total lodestar hours claimed are 60.5 by Mr. Mendel and 230.2 by Mr. Schoener. It would be impractical to reduce the claimed lodestar hours for time devoted to the negligence count because that was miniscule. However, a reduction is appropriate for that portion of the claim on which plaintiff was not successful. Plaintiff was not successful on the claim asserted against [*7] the City under *Monell v. Department of Social Services, 436 U.S. 658 (1978)*, or on the claims of lack of probable cause for the arrest of Mrs. Gregg, physical injury, or unreasonable use of force in making her arrest. Mrs. Gregg also claims for time spent on her husband's federal claim. Mr. Gregg was unsuccessful on his federal claim because the court found that there was probable cause for his arrest and that he was not arrested by Detective Mower. Further, Mrs. Gregg was unsuccessful in her claim for punitive damages for the civil rights violation. She received compensatory damages only of $1.00 on the federal claim.

Considering all of the claimed time for both of plaintiff's attorneys reasonable, I find that under the "results obtained" principles of *Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)*, a reduction of 65% is equitable. In Hensley, the court stated that "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id. at 440.* That determination is at the discretion of the district court. *Id. at 437; Institutionalized Juveniles v. Secretary of Public* [*8] *Welfare, 758 F.2d 897, 919, 921-22 (3d Cir. 1985).*

At least 35% of the time spent on the case, both in discovery and at trial, was devoted to the issue of lack of probable cause for the arrest. Yet, largely because of facts adduced by plaintiff's testimony, it was established to this court's satisfaction that there was probable cause.

Plaintiffs had promised to turn over the top to the police for inspection. Despite their knowledge of an ongoing police investigation and a citizen's complaint of theft, plaintiffs took steps to frustrate that investigation by causing the allegedly stolen top to be removed from the used car lot so that it could not be found by the police upon execution of a validly issued seizure warrant. Mrs. Gregg then admittedly told the police that she did not know where the top was when, in fact, she exercised control over it. Those facts, coupled with the undisputed facts surrounding the citizen's complaint of theft voiced to Mrs. Gregg directly, militated against the expenditure of time devoted to attempting to prove lack of probable cause for the arrest for obstruction of justice. Moreover, the obstruction of justice charge had been specifically added by the [*9] District Attorney's Office and not by Detective Mower.

At least 20% of the time claimed was devoted to the attempt to prove pre-trial and at trial causally related physical injuries and emotional distress related to physical injury. The jury's verdict that there was no battery or physical injury due to negligence justifies the disallowance of that time.

At least 10% of the briefing, argument, and trial time was devoted to the plaintiff's articulation and pursuit of state claims which were either withdrawn during trial or rejected by the jury and which were duplicative of the federal claim. Within that portion of non-compensable time is that devoted to pursuit of the unsuccessful federal claim against the City.

No more than 35% of the time claimed was devoted to the development of evidence on the strip search and the other circumstances surrounding the arrest and related emotional distress.

In calculating the lodestar, the results obtained adjustment must be made before considering the contingency or other adjustment factors. See *Hensley, 461 U.S. at 433-34.* The Hensley reduction factors compute as follows:

M. Mark Mendel 60.5 hrs. x $200/hr. [*10] x .35 = $ 4,235.00

George F. Schoener, Jr. 230.2 hrs. x $125/hr. x .35 = $10,071.25

Therefore, the lodestar is $14,306.25. This includes the time expended on the fee petition.

Defendant argues for a further reduction in the lodestar by striking all of Mr. Mendel's time because allegedly his participation was duplicative of Mr. Schoener's. Mr. Schoener should have been able to handle all aspects of the case, but in the interests of his clients, he determined that counsel with Mr. Mendel was appropriate. I find that Mr. Mendel's assistance and experience were helpful in clarifying some of the claims in the case and aided in conserving time. Although there was some duplication, I cannot say that the dual claims for trial time are unreasonable. Moreover, I have already considered in the Hensley result analysis this duplication by eliminating that part of the time devoted to unsuccessful state claims.

Plaintiff seeks an enhancer of 150% for contingency value. I find that no enhancer is appropriate. My analysis of the jury verdict is that the jury found that subjecting the plaintiff to a strip search was a violation of her constitutional rights and that the motivation was Detective [*11] Mower's anger stemming from the top being hidden from him. Establishing the unreasonableness of the strip search was not difficult or risky. Such body searches are not routinely done. It was undisputed that Detective Mower ordered the strip search be conducted by a female police officer in the garage of the used car lot and that plaintiff did not have a history of violence or have a weapon at the time of arrest, although she allegedly resisted the arrest. Proof of the motive for subjecting her to the strip search was supplied chiefly through plaintiff's testimony about the manner in which Detective Mower addressed her before and after the arrest. Given that strip searches are unusual, defendant had a high burden of justifying the need for inspection of her body cavities. Consequently, I do not find that the risk factor involved in vindicating plaintiff's civil rights warrants an upward adjustment. Given the experience of counsel and the largely undisputed facts on that issue, the risk of a finding of no civil rights violation was so small as to militate against any contingency enhancer.

I do not find that the quality of the work by plaintiff's counsel warrants either an increase or [*12] decrease. The hourly rates accepted by the court as reasonable reflect an anticipated high quality of work.

Plaintiff claims entitlement to expenses of $4,657.20. The claims for expenses related to physical injury, the lack of probable cause for arrest, and the deposition of Paul Capra shall be denied because they relate to the pursuit of unsuccessful claims, or because there is no showing that they relate to the successful claim or no showing of being allowable as a statutory cost. Disallowed are:

1987 U.S. Dist. LEXIS 308, *

| | |
|---|---|
| Frankford Hospital Records | 47.50 |
| Capra Deposition | 124.25 |
| Medical Records | 26.84 |
| Attorney Assist Agency | 60.00 |
| Dr. Seymour Shlomchick | 764.60 |
| Dr. William Simon | 121.50 |
| Ruth Paul Deposition | 72.80 |
| Borchick Waiting Time | 100.00 |
| | $ 1,317.49 |

The remaining expenses of $3,339.71 are allowed because they relate to proof of the mental anguish of plaintiff caused by the abuse of process by Detective Mower, or to the motivation for his actions.

In accordance with the foregoing, plaintiff's petition for fees and expenses is allowed against defendants, jointly and severally, in the total sum of $17,645.96.

An order follows.

**FINAL ORDER**

AND NOW, this 16th day of January, [*13] 1987, it is hereby ORDERED that attorneys fees of $14,306.25 and expenses of $3,339.71, for a total of $17,645.96, are awarded in favor of Barbara Odore Gregg and against the City of Philadelphia and Christopher Mower, jointly and severally.

46 of 100 DOCUMENTS

**WILLIAM MOORE and SANDRA MOORE v. CALN TOWNSHIP, BRANDYWINE HOSPITAL, et al.**

**CIVIL ACTION NO. 94-5705**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*1996 U.S. Dist. LEXIS 449*

**January 16, 1996, Decided**

**January 17, 1996, FILED, ENTERED**

**COUNSEL:**

[*1]    For WILLIAM E. MOORE, SANDRA J. MOORE, H/W, PLAINTIFFS: JOAN GAUGHAN ATLAS, OSTROFF & KLINE, LANSDALE, PA, USA.

For CALN TOWNSHIP, DEFENDANT: WILLIAM F. HOLSTEN, II, HOLSTEN & WHITE, MEDIA, PA, USA. ANDREW J. BELLWOAR, MEDIA, PA, USA. For RAYMOND SHELLER, A POLICE OFFICER EMPLOYED BY CALN TOWNSHIP, DEFENDANT: ROBERT G. HANNA, JR., CHRISTINE M. BRENNER, MARSHALL, DENNEHEY, WARNER, COLEMAN AND GOGGIN, PHILA, PA, USA. For BRANDYWINE HOSPITAL, BRIAN GARVER, AN EMPLOYEE OF BRANDYWINE HOSPITAL, RON LOCKWOOD, AN EMPLOYEE OF BRANDYWINE HOSPITAL, DEFENDANTS: VINCENT P. REILLY, MARSHALL, DENNEHEY, WARNER, COLEMAN AND GOGGIN, PHILA, PA, USA.

**JUDGES:**
John P. Fullam, Sr.J.

**OPINIONBY:**
John P. Fullam

**OPINION:**

MEMORANDUM AND ORDER

FULLAM, Sr.J.

JANUARY 16, 1996

Plaintiffs, husband and wife, brought this action against two Caln Township police officers and the Township, and against Brandywine Hospital and certain of its employees, claiming that their rights under the Federal Constitution and under state law were violated in the course of an incident which occurred on September 23, 1992.

On that date, plaintiff Sandra Moore purchased a ham and brought it home. Her husband, plaintiff William Moore, [*2] objected to the fact that the ham she purchased had a bone in it, whereas, in his view, only boneless ham should have been considered. At her husband's insistence, Mrs. Moore returned the suspect ham to the store, and exchanged it for a boneless ham; but the incident generated considerable ill will between the plaintiffs, and by the end of the evening they were not speaking to each other.

Mrs. Moore had previously been hospitalized for bouts of severe depression, and was under medication for that condition. The dispute over the ham triggered another bout of severe depression, and Mrs. Moore decided to commit suicide. She ingested an overdose of sleeping pills, but later wakened her husband and told him that she had done so. They called their family physician, and he advised them to go to a hospital.

The couple thereupon proceeded to the emergency room of the Brandywine Hospital. After some initial delay, they were seen by the emergency room physician, Dr. Maggioncalda. She administered a medication containing charcoal (to absorb the toxic substances ingested by Mrs. Moore). Not surprisingly, she also concluded that Mrs. Moore posed a potential suicide risk,

and advised the Moores [*3] to have Mrs. Moore remain overnight at the hospital for "observation". The Moores agreed, and Mrs. Moore was formally admitted to Brandywine Hospital as a patient at about 11 o'clock p.m.

After changing into a hospital gown, Mrs. Moore, accompanied by her husband, awaited assignment to a hospital room. In due course, an attendant came to escort Mrs. Moore to her assigned room, but when the Moores learned that she had been assigned to a room in the psychiatric ward, they objected. They strenuously insisted that Mrs. Moore had been admitted to the hospital as an ordinary patient, not as a psychiatric patient, and should be assigned to a "regular" hospital room. The attendant then left, in order to consult the doctor and obtain clarification of Mrs. Moore's status. Further delay ensued. Eventually, the Moores decided to go home, and Mrs. Moore changed back into street clothes.

As the Moores were leaving the hospital, Dr. Maggioncalda saw them leaving, and instructed an orderly that they should not be permitted to leave.

By this time, the Moores were out in the parking lot, in their automobile. Someone on the hospital staff enlisted the aid of a Caln Township police officer, the defendant [*4] Raymond Sheller. Another police officer, Robert Shaw, arrived shortly thereafter.

Although the trial testimony is in great confusion as to precisely what happened next, it is undisputed that the police officers prevented Mrs. Moore from driving their car out of the parking lot; that one of the police officers reached through a partially open window and succeeded in unlocking the car door and removing Mr. Moore from the vehicle; and that a police officer turned off the ignition.

According to Mr. Moore, "all hell broke loose", and the police acted "like mad dogs". There is general agreement that Mr. Moore was handcuffed by the police, and that two hospital attendants intervened to prevent Mrs. Moore from going to her husband's assistance. It is also clear that Mrs. Moore was handcuffed, and that both of the plaintiffs were then escorted back into the emergency room.

When the police brought plaintiffs back into the emergency room, Dr. Maggioncalda immediately informed the officers that there was no need for handcuffs, and that, if the Moores insisted upon leaving the hospital contrary to medical advice, they had a right to do so. The handcuffs were then removed, and the plaintiffs, [*5] after declining medical treatment or x-ray examination, returned to their home. This lawsuit followed.

By its verdict, the jury found in favor of Mr. Moore on his false-arrest claim, but rejected all of the other state-law claims of both plaintiffs, and also rejected Mrs. Moore's constitutional claims. Specifically, the jury found that the brief "seizure" of Mrs. Moore was supported by probable cause and was lawful; that her constitutional rights had not been violated; and that the police had not used excessive force against her.

The jury also rejected Mr. Moore's assault-and-battery claims, and his claims that excessive force was employed in the course of his "arrest". The jury did, however, find that Mr. Moore's arrest was unlawful, and that his constitutional rights had been violated. On his state-law claim for false arrest, the jury awarded damages in the sum of $ 41,020.68 (the precise amount of the special damages sought by Mr. Moore for the physical injuries he allegedly sustained as a result of the excessive force employed by the police). The jury also awarded Mr. Moore $ 75,000 in damages for the violation of his constitutional rights. Thus, the jury verdict in favor of [*6] Mr. Moore totaled $ 116,000.

The defendants have filed a motion for judgment as a matter of law, and an alternative motion for a new trial or a remittitur.

At the conclusion of my charge to the jury, before the jury retired to deliberate, I explained to counsel that I did not consider it necessary to instruct the jury on the issue of the qualified immunity of the police-officer defendants because, in my view, if excessive force was used as luridly described by the plaintiffs, the officers would not be entitled to an immunity defense, whereas if the jury rejected the excessive-force claim the officers would be entitled to immunity from damage claims as a matter of law. Counsel for all parties were apparently satisfied with that approach.

As noted above, the jury's verdict rejected all claims except the claims of plaintiff William Moore against the defendant Officer Sheller. The jury found that Mr. Moore's arrest was unlawful, and that his constitutional rights were thereby violated. But, in expressly rejecting the claim that excessive force was used in achieving the arrest, the jury rejected the only claim which could possibly overcome Officer Sheller's qualified immunity defense. [*7]

It was objectively reasonable for the police to detain the plaintiffs briefly, until the situation could be clarified. Even Mr. Moore's testimony makes clear that the use of at least some physical force was necessary to achieve this justified objective and, indeed, that Mrs. Moore sought, by physical means, to frustrate the police efforts to calm the situation until clarification could be obtained. The only questionable aspect of the detention was the application of handcuffs, but the jury's verdict establishes

that even this step was necessary and reasonable under the circumstances.

Thus, there are two independent bases for granting Officer Sheller's motion for judgment as a matter of law: plaintiffs' counsel acquiesced in the decision to remove the immunity issue from jury consideration, and, irrespective of that acquiescence, the evidence establishes the immunity defense as a matter of law, once the excessive-force claims were rejected.

It is appropriate to address defendants' alternative motion for a new trial or remittitur. The issues were submitted to the jury in a charge to which neither side objected, and which neither side now challenges. The only issue, therefore, is whether [*8] the jury's verdict was excessive. In my view, it plainly was.

Although plaintiff presented evidence of back and shoulder problems, hospitalizations, treatments by specialists, etc., etc., the likelihood that these damages resulted from the confrontation which gave rise to this lawsuit (rather than to pre-existing conditions for which plaintiff had been treated, but which he professed not to recall) is remote. More important, the injuries for which recovery was sought could not have resulted from the illegality of plaintiff's arrest, but only from the excessive force which plaintiff claimed was applied, but which the jury's verdict negated.

If my ruling granting judgment as a matter of law is incorrect, and the immunity defense does not preclude recovery, then it would be clear that plaintiff William Moore is entitled to damages for false arrest and for the attendant violation of his constitutional rights. But the alleged arrest spanned a period of approximately 10 or 15 minutes at most, and the invasion of his constitutional rights was technical and minor. In my judgment, any verdict in excess of $ 5,000, for these rather trivial inconveniences, would be grossly excessive. Defendant's [*9] alternative motion for a new trial will be conditionally granted, as to the issue of damages only, unless plaintiff accepts a reduction in the total amount of the verdict to $ 5,000. This ruling is, of course, conditioned upon the reversal of my ruling granting judgment as a matter of law.

ORDER

AND NOW, this 16th day of January, 1996, it is ORDERED:

1. Defendant's motion for judgment is GRANTED. The jury's verdict is VACATED, and judgement is entered in favor of the defendants and against the plaintiffs, in all respects.

2. In the event the foregoing ruling is later vacated upon appeal, defendant's alternative motion for a new trial is GRANTED, as to the issue of damages only, unless plaintiff William Moore accepts a reduction of the verdict to the sum of $ 5,000.

3. Plaintiffs' motion for counsel fees is DENIED.

John P. Fullam

Sr.J.

## **CERTIFICATE OF SERVICE**

I, Rachael L. Minnich, an employee with the law firm of Marshall, Dennehey, Warner, Coleman & Goggin, do hereby certify that on this ☩ day of February, 2002, a true and correct copy of the foregoing document was served via U.S. first-class mail, postage pre-paid, as follows:

Spero T. Lappas, Esquire
THE LAW OFFICES OF SPERO T. LAPPAS
205 State Street
P.O. Box 808
Harrisburg, PA 17108-0808

RACHAEL L. MINNICH